### LLOYDS AMERICA et al. v. FERGUSON et al.

### No. 9690.

Circuit Court of Appeals, Fifth Circuit.

Jan. 17, 1941.

Charles L. Neely, of Memphis, Tenn., for appellants.

Phil Stone, of Oxford, Miss., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee M. L. Dunlap, under the name Dunlap Bus Lines, operated ·a passenger bus line between Clarksdale and Oxford, Mississippi. Prior to beginning operations, she, as required by Section 7124,[1] Mississippi Code, 1930, filed with the Mississippi Railroad Commission a public liability or indemnity policy of insurance issued to her as operator of Dunlap Bus Lines by Lloyds America and procured from the commission a certificate of convenience and necessity for the operation of the bus line.

Appellee Ferguson, while a passenger on the Dunlap Bus Line between Clarksdale and Oxford, received injuries for which he sued, and obtained judgment for $5,000 against M. L. Dunlap as operator of Dunlap Bus Lines. This suit was brought by appellant Lloyds America for a declaration that the coverage of the policy it had issued did not extend to the injuries Ferguson had received.

The claim was that the policy insured "the motor vehicles described in the policy and any motor vehicle substituted therefor, but no additional vehicles", and that the vehicle in which Ferguson was riding was neither a motor vehicle described in the policy nor one substituted therefor, but an additional motor vehicle.

The district judge hearing the case without a jury determined and declared that the coverage of the insurance did extend to Ferguson's injuries and that plaintiff was liable to pay the judgment.

This declaration and the judgment following were based upon the conclusions (1) that the taxicab in which Ferguson was riding was a substituted motor vehicle within the terms of the policy, and (2) that the policy must be read as though there was written in it the terms of Code Section 7124, requiring a transportation company seeking a certificate to file with the commission a public liability or indemnity insurance policy "covering injuries and damages accruing to persons or property, arising out of its operations as such transportation company", and so read, the coverage extended to Ferguson's claim.

Lloyds America, its attorneys in fact and its receiver, have appealed, insisting

---

[1] "7124. *Bond and liability insurance required.*—Before a certificate shall be issued to any transportation company, it shall file with the commission a bond in a penal sum of $500.00 * * *. In addition to said bond, such company shall also secure and file with the commission public liability or indemnity insurance in a sum not less than $5,000.00 satisfactory to the commission and in such an amount as it shall prescribe, covering injuries and damages accruing to persons or property, arising out of its operations as such transportation company. Such insurance shall be subject to cancellation for nonpayment of premiums or withdrawal from service of a vehicle or vehicles covered thereby upon fifteen days written notice to the insured and to the commission. * * *"

here that these conclusions which form the basis of the declaration and judgment, are without support in fact and in law, and that the declaration and judgment based on them may not stand. Appellees as earnestly insist that the judgment was right and may not be disturbed. We agree with appellees.

The facts stipulated and without dispute may be briefly stated. Appellee M. L. Dunlap, under the name of Dunlap Bus Lines, obtained a certificate of convenience and necessity and operated a bus line for carrying passengers between Clarksdale and Oxford, Mississippi. Before beginning operations, she, as required by the statute, filed the policy in question with the Mississippi Railroad Commission and obtained its endorsement[2] thereon.

Two automobiles, one a Plymouth, capacity not stated, were described in the policy.

On March 29, 1938, W. H. Ferguson bought a ticket at Rosedale, Mississippi, for transportation over the Delta Transportation Lines to Clarksdale and over the Dunlap Bus Lines to Batesville, Mississippi. The Plymouth bus, which ordinarily made that run, was undergoing repairs on that day and a seven-passenger Packard belonging to M. L. Dunlap had been sent from Batesville, the headquarters of Dunlap Bus Lines, and was being used. The agent for Dunlap Bus Lines at Clarksdale, seeing that the seating capacity of the Packard had been fully taken up without providing for all the passengers, hired from the 999 Taxicab Company of Clarksdale, Mississippi, one of its taxicabs, a Ford car, for the Dunlap Bus Lines, to transport the passengers holding tickets on that line, there for travel to Batesville, Mississippi. Ferguson first got into the Packard. Then being told by Dunlap's driver to get into the Ford, he did so and it was while riding in that car, on his way to Batesville, as a passenger of the Dunlap Bus Lines that he received the injuries for which he sued M. L. Dunlap and obtained the judgment, to avoid payment of which this suit was filed.

Appellant makes some, but not much, point of the fact that the Ford car was a taxicab owned and operated by a licensed taxicab company, and that the use of the cab, to transport Ferguson, was in effect the same as though arrangements had been made with the railroad company or an independent bus line to honor Ferguson's ticket and by an independent operation, complete the carriage. But no arrangements for independent carriage were made with the taxicab company and this contention will not do. What was done by the agent of the bus lines, and all that was done by him, was to rent or hire a car for operation by the lines, so that for the operation the car was to all

[2] Mississippi Railroad Commission Jackson, Mississippi, Endorsement.

"In consideration of the premium stated in the policy to which this endorsement is attached the insurer hereby insures 'the motor vehicles described in the policy and any motor vehicle substituted therefor, but not additional motor vehicles', and agrees to pay within the limits of the policy or any endorsement attached thereto any final judgment for personal injuries, including death resulting therefrom (suffered by any persons other than the insured or his employees) and/or damages to property (including loss of, or damages to property of passengers, after receipt thereof by the motor transportation company for transportation and while carried on the motor vehicle), but excluding property of the assured or property (usually designated as 'cargo') loaded for shipment or in transit, caused by the negligent operation of said motor vehicles operated by the assured pursuant to a certificate of public convenience and necessity issued in accordance with said Mississippi Motor Carrier Act of 1926, and further agrees that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment.

"No condition, provision, stipulation or limitation, contained in the policy or any other endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured in person or property by the negligence of the insured or relieve the insurer from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amount set forth in the policy. * * *

"Subject to all the conditions, limitations and agreements of the policy as written, except as herein specifically provided.

"This endorsement when countersigned by a duly Authorized Agent of Lloyds America and attached to Policy No. USA 65047 issued to S. B. Dunlap operating as Dunlap Bus Lines shall be valid and form a part of said Policy."

intents and purposes its own car and it was responsible as though it were its own.

Appellant stands most firmly, however, on the proposition that the policy and the commission endorsement specifically limited its liability to the two described automobiles, and any vehicles substituted therefor, and specifically excluded its liability for additional motor vehicles; and that upon the undisputed evidence the taxicab was not a motor vehicle substituted for the Plymouth, but was an additional vehicle.

Appellee with as much confidence, arguing that there is ample warrant in the evidence for the finding, the district judge made, that the taxicab was a vehicle substituted for the Plymouth, and not an additional motor vehicle within the meaning of the policy, points to the undisputed fact that the Packard car which appellant claims was the substitute for the Plymouth was not of sufficient capacity to do the work which the Plymouth was insured to do, and to do that work it was necessary to use as a substitute for the Plymouth both the Packard and the Ford. It particularly points out that the record is devoid of evidence as to the carrying capacity of the Plymouth, and of evidence that the Plymouth, if available, could not have carried all the passengers, including Ferguson.

In addition appellee insists that if construed without regard to the statute, the terms of the policy do not cover the Ford car, as a substitute for the Plymouth, they do cover it when construed in the light of the statutory provisions requiring the policy to cover injuries and damages accruing to persons or property arising out of the operations of its insured as a transportation company. For in their light, any ambiguity or uncertainty as to the effect of the facts must be determined against the insurer, and the policy must be read as covering the two vehicles employed in the operation conducted under the statutory permit, which was ordinarily conducted by the Plymouth. We agree with appellee. We will not undertake to decide what should be the construction of the policy if there were no statute.

Nor will we determine whether the Mississippi statute as to passengers strikes down the provisions in the policy limiting the coverage to the "vehicles described and any vehicle substituted therefor" and provides coverage for all vehicles operated under the permit though not described in the policy as has been in effect held of the Alabama Statute,[3] of the South Dakota Statute,[4] of the Tennessee Statute,[5] and of the Indiana Statute.[6]

We will content ourselves with holding that, construing the policy in the light of the words of the statute, and of the purpose and intent of both statute and policy, it would be a dry and narrow construction which would exclude from the coverage an automobile, employed as this car was, to carry passengers over the route and on the schedule of the Plymouth bus, merely because it took two vehicles instead of one to substitute for the Plymouth and effect the transportation ordinarily effected by it.

The clause appellant relies on to exclude the Ford car from the coverage was not intended to, it should not have, the effect claimed for it here. Assuming its validity, its purpose and intent was not to narrowly limit or defeat coverage, it was to make the coverage reasonably definite as to the vehicles the insured intended normally to use, while at the same time permitting the operations to go on should the particular vehicles named be temporarily out of commission. Thereby the company was enabled, certainly as between it and the assured,[7] to issue a policy upon a rate fair to both insured and insurer, rather than one at a prohibitive premium for blanket coverage of any and all vehicles which the company might own or operate. That policies issued as this one was, should be and are given reasonable and liberal construction to effectuate the coverage actually intended, has been decided many times. We need not cite the cases.

The judgment was right. It is affirmed.

Affirmed.

3 Fidelity & Casualty Co. v. Jacks, 231 Ala. 394, 165 So. 242; Employers Insurance Company v. Johnston, 238 Ala. 26, 189 So. 58.

4 Hipp v. Prudential Casualty & Surety Company, 60 S.D. 300, 244 N.W. 346.

5 Johnson Transfer Lines v. American Nat. Fire Ins. Co., 168 Tenn. 514, 79 S.W.2d 587, 99 A.L.R. 277; Liberty Mut. Ins. Co. v. McDonald, 6 Cir., 97 F.2d 497.

6 Hindell v. State Farm Mut. Ins. Co., 7 Cir., 97 F.2d 777, 783.

7 Service Stages v. Central Surety Company, 231 Ala. 417, 165 So. 248.